**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**WILLIAM J. COHEN**
Cohen Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NESTOR CANENGUEZ-RAMIREZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A04-1307-PC-371 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1207-PC-68

**April 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Nestor Canenguez-Ramirez appeals the post-conviction court's denial of his petition for post-conviction relief. Canenguez-Ramirez raises four issues which we consolidate and restate as whether the court erred in denying his petition for post-conviction relief. We affirm.

FACTS AND PROCEDURAL HISTORY

In 2004, the State charged Canenguez-Ramirez with two counts of child molesting as class A felonies. On January 17, 2008, he filed a motion for dismissal pursuant to Ind. Criminal Rule 4(C), and the court later denied his motion. On May 7, 2008, he signed an acknowledgement of trial date which included the trial date, time, and the following language: "I will be present in court at that time on the trial date and until the trial is concluded." Appellant's Appendix at 90. The acknowledgement was also signed by his trial counsel, Attorney Rodolfo Monterrosa, Jr.

At some point, Canenguez-Ramirez took his clothing from his house, left Indiana, went to Texas, and failed to appear for his trial. On August 14, 2008, he was convicted of two counts of child molesting as class A felonies. He failed to appear at the sentencing hearing, and the court sentenced him to thirty-five years for each count to be served consecutive to each other for an aggregate sentence of seventy years. At the end of the sentencing hearing, Attorney Monterrosa asked to withdraw from the case and if the court might consider appointing the public defender to represent Canenguez-Ramirez on appeal. Attorney Monterrosa explained that "within the last year or two, I've, basically, proceeded with the case *pro bono*, including getting transcripts in preparation for this case that we paid from our own pocket . . . ." Trial Transcript at 575. The court granted

2

Attorney Monterrosa's request to withdraw and denied the request to appoint a public defender because Canenguez-Ramirez did not personally ask for one and did not provide evidence of his indigency.

At some point, Canenguez-Ramirez was arrested in Texas and returned to Indiana. On May 18, 2010, acting through Attorney Juan Garcia, he filed a motion for permission to file a belated notice of appeal and argued that he was misled by his trial counsel and that his trial counsel failed to explain to him his appellate rights, possible defenses, and his need to appear for his jury trial and sentencing hearing. He also alleged that he had a very limited understanding of the American legal system, had a second grade education, had never been involved in a legal case, and is illiterate.

On July 22, 2010, the court held a hearing on the motion. Attorney Garcia examined Canenguez-Ramirez who testified that he did not appear for the trial or the sentencing hearing because there were a lot of court dates and they kept being continued and he could not afford to miss work. He testified that no one explained to him the consequences of failing to appear for the trial or the sentencing hearing and that he did not speak with Attorney Monterrosa about the situation. He also testified that he was not able to read and write, and when asked the last grade he finished in school, he answered: "I did not attend school; I didn't study." Id. at 582. On cross-examination, he testified that he knew enough of American law to know that he had to have an attorney. He also indicated that he hired an attorney on his own but could not continue paying him. He said that Attorney Monterrosa was not aware that he was not going to court and that he had his attorney's phone number. He also admitted that while the trial was in progress,

3

he took his clothing from his house, left Indiana, and went to Texas, and that he never returned to Indiana or called his attorney to inquire as to the status of the case.

The court then questioned Canenguez-Ramirez, and he responded that he obtained his liberty pending trial by posting a bond, that it was never explained to him that he was not supposed to leave the State, that it was explained to him that he was supposed to maintain contact with the bondsman, and that he complied and did not know why his bond was forfeited. Later, he testified that he had not contacted his bondsman since before his trial even though he was supposed to remain in contact.

Attorney Garcia argued that Canenguez-Ramirez had a very limited understanding of the legal system, that this was the first legal case Canenguez-Ramirez has had, and that Attorney Monterrosa failed to guard his legal rights including ensuring that Canenguez-Ramirez understood his appellate rights, possible defenses, and duty to appear for trial and sentencing.

On August 17, 2010, the court denied Canenguez-Ramirez's motion and found that his failure to file a timely notice of appeal was due to his voluntary act of leaving Indiana and deliberately failing to keep himself apprised of his procedural rights upon conviction.

On July 19, 2012, Canenguez-Ramirez filed a petition for post-conviction relief. He alleged that he should be discharged because he was not tried within the time limits in Ind. Criminal Rule 4, that the court erred in denying his request for permission to file a belated appeal, that Attorney Garcia was ineffective by failing to file a direct appeal of the trial court's denial of the motion to file a belated appeal, and that issues on direct

4

appeal include whether the evidence was sufficient and whether the court abused its discretion by imposing consecutive sentences.

On April 4, 2013, the court held a hearing at the beginning of which Canenguez-Ramirez's counsel stated that all issues would be voluntarily withdrawn except for the issue of whether prior counsel was ineffective for failing to file a notice of appeal after the denial of the motion for permission to file a belated notice of appeal. Attorney Garcia testified regarding his involvement with the case and admitted that he was not aware that Post-Conviction Rule 2 provided a remedy if the court denied the motion for permission to file a belated notice of appeal.

On June 28, 2013, the court denied his petition for post-conviction relief, specifically stating:

> 21. [Canenguez-Ramirez] contends that Garcia was ineffective for failing to file a direct appeal of this court's denial of [Canenguez-Ramirez's] REQUEST FOR PERMISSION TO FILE BELATED NOTICE OF APPEAL. There was absolutely no obligation for Garcia to file an appeal. It was within his professional judgment, after reviewing and considering the law and facts relevant to the plausible options, whether to file an appeal of the court's denial of [Canenguez-Ramirez's] REQUEST FOR PERMISSION TO FILE BELATED NOTICE OF APPEAL. Even if Garcia's failure to recognize the option to file an appeal in this instance constitutes deficient performance, [Canenguez-Ramirez] must also establish that had counsel filed an appeal, the outcome of his case would have been different. Strickland[ v. Washington, 466 U.S. 668, 668, 104 S. Ct. 2052, 2064 (1984), reh'g denied].
>
> 22. In order to be granted permission to file a belated notice of appeal, a petitioner must establish by a preponderance of the evidence that he was without fault and was diligent in pursuing permission to file a belated appeal. Salazar v. State, 854 N.E.2d 1180, 1184 (Ind. Ct. App. 2006). In denying [Canenguez-Ramirez's] REQUEST FOR PERMISSION TO FILE BELATED NOTICE OF APPEAL, the court concluded that the failure of [Canenguez-Ramirez] to file a

timely appeal was due to his own acts, particularly his voluntary flight to the state of Texas and failure to communicate with his attorney. [Canenguez-Ramirez] admitted at the hearing on his REQUEST FOR PERMISSION TO FILE BELATED NOTICE OF APPEAL that he knew when his trial date was, and that he voluntarily left the state and failed to appear after the trial had started. [Canenguez-Ramirez] also alleged that he did not understand his appellate rights, however, this was due to [Canenguez-Ramirez's] failure to appear, and his choice not to communicate with his lawyer, his bondsman, or the court. The record establishes that [Canenguez-Ramirez's] right to appeal was discussed at the sentencing hearing. After Monterrosa's request to withdraw was granted, he requested that the court appoint appellate counsel to pursue an appeal on behalf of [Canenguez-Ramirez]. The court declined to do so, noting that no evidence of indigency had been presented. For all these reasons, the court found that [Canenguez-Ramirez] had not met the criteria of being without fault, and denied [Canenguez-Ramirez's] REQUEST FOR PERMISSION TO FILE BELATED NOTICE OF APPEAL.

23. Essentially, [Canenguez-Ramirez's] contention that he had meritorious issues for direct appeal but was denied the opportunity to pursue an appeal is without merit. [Canenguez-Ramirez] was not denied the right to appeal. Rather, by his own actions of choosing not to be present, he waived the right to a direct appeal. Given the facts of this case, even if Garcia would have filed an appeal, [Canenguez-Ramirez] did not meet the prerequisites for being permitted to file a belated appeal. Therefore, Garcia's failure to file an appeal did not prejudice [Canenguez-Ramirez]. Accordingly, Garcia was not ineffective.

Appellant's Appendix at 15-16.

## DISCUSSION

Before discussing Canenguez-Ramirez's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the

6

denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

Canenguez-Ramirez argues that Attorney Garcia was ineffective because he did not know that he could appeal the court's denial of his motion to file a belated notice of appeal. He argues that the post-conviction court erred in concluding that he had not demonstrated prejudice because a direct appeal would have included his legal argument that Ind. Criminal Rule 4(C) requires his discharge. He contends that Attorney Garcia was hired to file an appeal and the decision not to appeal was based on ignorance and not on any strategy.

Canenguez-Ramirez phrases one of his issues as whether the trial court erred in denying his petition by not using the standard in Baum v. State, 533 N.E.2d 1200 (Ind. 1989). He then appears to argue that Attorney Garcia failed the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), reh'g denied. He also

7

asserts that Attorney Garcia's failure to read and thoroughly investigate the law and failure to actually file the appeal amounts to a complete lack of representation and abandonment based upon Hill v. State, 960 N.E.2d 141 (Ind. 2012), reh'g denied; and Baum. He contends that he was not at fault for failing to appeal and that the failure to advise him of his appellate rights, his lack of education, his inability to speak English, and his reliance on his attorney who abandoned him, all weigh in favor of finding that Canenguez-Ramirez was not at fault for failing to appeal. Lastly, he contends that "[i]f this Court permits [him] to appeal, then this Court could consider the Defendant's Motion for Discharge under [Ind. Criminal Rule 4(C)] which the trial court denied." Appellant's Brief at 11.

The State argues that Attorney Garcia appeared and represented Canenguez-Ramirez in a procedurally fair setting that resulted in a judgment of the court, and that Canenguez-Ramirez's claim is precisely the claim that the Indiana Supreme Court rejected in Hill. The State asserts that Canenguez-Ramirez's freestanding challenges to the denial of his petition for a belated appeal and the alleged Ind. Criminal Rule 4 violation are not properly before this court. The State also notes that while the post-conviction court and the parties were incorrect to analyze the case under a Strickland analysis, that error can provide Canenguez-Ramirez with no relief.

Ind. Post-Conviction Rule 2 ("P–C.R. 2") applies to criminal defendants who did not meet the time requirements for noticing and perfecting an appeal. Hill, 960 N.E.2d at 144. The rule authorizes a defendant to petition the court for permission to pursue a

belated appeal. At the time of the trial court's order denying Canenguez-Ramirez's motion for a belated appeal, the rule provided:

(a) *Required Showings.* An eligible defendant convicted after a trial or plea of guilty may petition the trial court for permission to file a belated notice of appeal of the conviction or sentence if;

    (1) the defendant failed to file a timely notice of appeal;

    (2) the failure to file a timely notice of appeal was not due to the fault of the defendant; and

    (3) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

\* \* \* \* \*

(c) *Factors in granting or denying permission.* If the trial court finds that the requirements of Section 1(a) are met, it shall permit the defendant to file the belated notice of appeal. Otherwise, it shall deny permission.

\* \* \* \* \*

(e) *Appealability.* An order granting or denying permission to file a belated notice of appeal is a Final Judgment for purposes of Ind. Appellate Rule 5.

(f) *Time for initiating appeal.*

    (1) If the petition includes a proposed notice of appeal as an Exhibit, an order granting the petition shall also constitute the filing of that notice of appeal in compliance with the time requirements of App. R. 9(A).

    (2) If the petition does not include a proposed notice of appeal as an Exhibit, the time for filing a notice of appeal is governed by App. R. 9(A).

9

P–C.R. 2(1).[1]  If the trial court denies the defendant's petition for a belated appeal, "the rule explicitly permits a defendant to appeal the denial." Hill, 960 N.E.2d at 145 (citing P–C.R. 2(1)(e)).

There is no constitutional right to counsel in post-conviction, or collateral review, proceedings under either the federal or the state constitution. Hill, 960 N.E.2d at 145 (citing Graves v. State, 823 N.E.2d 1193, 1196 (Ind. 2005)). Accordingly, the Indiana Supreme Court has explicitly declined to apply the well-known standard for trial and appellate counsel. Id. Thus, instead of using the "rigorous standard set forth in Strickland," courts instead judge post-conviction counsel by a "lesser standard" based on due-course-of-law principles. Id. (quoting Baum, 533 N.E.2d at 1201). "When evaluating post-conviction counsel, courts inquire whether 'counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court.'" Id. (quoting Baum, 533 N.E.2d at 1201). This standard for judging post-conviction counsel, commonly referred to as the "Baum standard," has been applied routinely in the context of counsel's performance during Post-Conviction Rule 1 proceedings. Id. A P–C.R. 2 counsel's performance should be measured under the Baum, and not Strickland, standard. Id. The Baum standard is highly deferential and a Baum claim is intended to be more difficult for defendants to prove than a Strickland claim. Id. at 149.

---

[1] The Rule was subsequently amended September 20, 2011, effective January 1, 2012, and subsection (f) now provides: "*Time and procedure for initiating appeal.* If the court grants permission to file a belated notice of appeal, the time and procedure for filing such notice of appeal is governed by App. R. 9(A)."

The Indiana Supreme Court explained the underlying bases for using the <u>Baum</u> standard and observed:

> The P–C.R. 2 petition or hearing, on the other hand, should not include the underlying merits of the appeal itself. For example, the trial court conducting a P–C.R. 2 hearing would not address a substantive challenge to the defendant's sentence—that issue, if the P–C.R. 2 petition is granted, is left for the appellate court to decide. Notably, this Court has described P–C.R. 2 as a "vehicle" or "avenue" to obtain a direct appeal.

<u>Id.</u> at 146.

In <u>Hill</u>, the Court addressed the application of <u>Baum</u> to a case in which a P–C.R. 2 counsel failed to timely appeal the trial court's denial of the defendant's P–C.R. 2 petition. <u>Id.</u> at 147. The Court held that "[e]ssentially, granting Hill's P–C.R. 1 petition would allow [him] to appeal the denial of his petition to file a belated appeal" and "would not automatically give [him] the ability to pursue a direct appeal of his sentence, but it would give [him] the opportunity to demonstrate why the trial court was wrong in denying him permission to pursue a belated direct appeal." <u>Id.</u> at 148. Accordingly, the Court narrowed and framed the relevant issue as whether P–C.R. 2 counsel violated the <u>Baum</u> standard by failing to timely appeal a denial of a P–C.R. 2 petition.[2] <u>Id.</u>

The Court noted that it was important that Hill's Post-Conviction Rule 1 ("P–C.R. 1") petition did *not* address P–C.R. 2 counsel's performance in filing the P–C.R. 2 petition or her performance during the P–C.R. 2 hearing and that it alleged only that her

---

[2] The Court in <u>Hill</u> noted:

> When we refer to "P–C.R. 2 counsel" within this opinion, we are referring to a lawyer who handles the filing of a P–C.R. 2 petition; attends a P–C.R. 2 hearing, if any; and deals with an appeal of a denial of a P–C.R. 2 petition. What we are *not* referring to is a lawyer who represents a defendant on direct appellate review *following* the grant of a P–C.R. 2 petition, as he or she would be, for all practical purposes, direct appellate counsel.

960 N.E.2d at 146 n.2.

11

performance *following* the denial of the P–C.R. 2 petition violated <u>Baum</u>. <u>Id.</u> The Court held that the failure to timely appeal a P–C.R. 2 denial, standing on its own, does not violate <u>Baum</u>, and that the appropriate inquiry was whether P–C.R. 2 counsel denied the criminal defendant of a procedurally fair setting during the entire course of the P–C.R. 2 proceeding, which includes the filing of the petition and representation during a P–C.R. 2 hearing, if any. <u>Id.</u> "To separate the appeal of a P–C.R. 2 petition denial from the rest of the P–C.R. 2 proceedings creates a significant logical problem: an automatic end run around the limitations of P–C.R. 2 and Indiana Appellate Rule 9." <u>Id.</u> The Court held that this automatic end run is an example of which the Court disapproves. <u>Id.</u> at 149. The Court also held that, as pleaded, Hill's P–C.R. 1 petition did not present any cognizable claim, as he alleged a violation of <u>Baum</u> based solely on P–C.R. 2 counsel's failure to timely appeal the P–C.R. 2 denial. <u>Id.</u> at 150. The Court observed that "[t]he proper route for Hill would have been to challenge, in his P–C.R. 1 petition, [P–C.R. 2 counsel's] performance during the P–C.R. 2 proceedings *as a whole*." <u>Id.</u> The Court held that even if Hill had challenged his P–C.R. 2 counsel's performance as a whole, his claim would have failed given that his P–C.R. 2 counsel far from abandoned him. <u>Id.</u>

Similar to the petitioner in <u>Hill</u>, Canenguez-Ramirez's petition, as pleaded, did not present any cognizable claim as he essentially alleged a violation of <u>Baum</u> based solely on Attorney Garcia's failure to timely appeal the P–C.R. 2 denial. Even if he had challenged Attorney Garcia's performance as a whole, his claim would have failed. Attorney Garcia testified that he consulted with Canenguez-Ramirez's sister on February 19, 2010, spoke with trial counsel Attorney Monterrosa regarding the case, filed a motion

12

for belated appeal, spoke with Canenguez-Ramirez before preparing the petition, was present at the P–C.R. 2 hearing, questioned Canenguez-Ramirez, argued in favor of granting the petition, and requested that the court have Canenguez-Ramirez remain at the jail so that he could speak with him about potential future actions. Under the circumstances, we cannot say that Canenguez-Ramirez was deprived of a procedurally fair setting.[3] See Hill 960 N.E.2d at 150 (holding that P–C.R. 2 counsel far from abandoned petitioner where she filed the petition seeking a belated appeal, appeared at the hearing, presented both testimonial and documentary evidence, and made a thorough argument to the trial court); cf. Waters v. State, 574 N.E.2d 911, 912 (Ind. 1991) (holding that counsel abandoned his client and deprived petitioner of a fair hearing where the post-conviction court ordered that the evidence supporting the petition be by affidavit only and petitioner submitted affidavits *pro se* that were technically inadequate and that counsel should have known this and did not present any evidence in support of his client's claim).

To the extent Canenguez-Ramirez phrases one of his issues as whether the trial court erred in denying his petition by not using the standard in Baum, we observe that at the post-conviction hearing, his counsel did not mention Baum but referenced Strickland and stated it "sets the standard out for . . . ineffective assistance of counsel." Post-Conviction Transcript at 9. Counsel later referenced Strickland again, and during argument, stated that P–C.R. 2 counsel was ineffective under Strickland. We also observe that the Court in Hill stated that the Baum standard is highly deferential and a

---

[3] Canenguez-Ramirez relies upon Jordan v. State, 988 N.E.2d 394 (Ind. Ct. App. 2013), for the proposition that he could not be at fault for failing to file a timely notice of appeal. Jordan involved the timely appeal of the denial of a petition seeking permission to file a belated notice of appeal and did not involve an analysis under Hill or Baum. Accordingly, we do not find Jordan instructive.

13

Baum claim is intended to be more difficult for defendants to prove than a Strickland claim. 960 N.E.2d at 149. We cannot say that reversal is warranted on this basis.

CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of Canenguez-Ramirez's petition for post-conviction relief.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.